

**ORDERED in the Southern District of Florida on December 03, 2010.**

A. Jay Cristol, Judge
United States Bankruptcy Court

___

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

| IN RE: | Case No.: 09-12684-BKC-AJC |
|---|---|
| SOL, LLC d/b/a SOL Sotheby's International Realty, | Chapter 7 |
| Debtor./ | |

### ORDER GRANTING TRUSTEE'S MOTION TO APPROVE SETTLEMENT AND COMPROMISE WITH MARCIA DUNN, TRUSTEE IN BANKRUPTCY FOR CARLOS JUSTO [D.E. # 70], AND OVERRULING CREDITOR TIM ELMES'S OBJECTION THERETO

THIS MATTER came before the Court on October 7, 2010 at 3:00 p.m. upon the Trustee's *Motion to Approve Settlement and Compromise with Marcia Dunn, Trustee in Bankruptcy for Carlos Justo* [D.E. # 70] (the "Motion to Approve Settlement") and upon the *Creditor, Tim Elmes'* (sic) *Objection to the Motion to Approve Settlement* [D.E. # 71] (the "Objection"). The Court, having considered the Motion to Approve Settlement and the

Objection, having heard argument of counsel, and having been otherwise fully advised in the premises, orders and adjudges as follows:

The Motion to Approve Settlement is GRANTED, and Creditor, Tim Elmes's Objection to the Motion to Approve Settlement is OVERRULED based upon the following facts before the Court and applicable law:

## PROCEDURAL BACKGROUND

1. On February 18, 2009 (the "Petition Date"), the Debtor, a licensed and registered Florida real estate brokerage firm, filed a voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Southern District of Florida, Miami Division.

2. Thereafter, Alan Goldberg was appointed as the Chapter 7 Trustee ("Trustee") for the Debtor.

3. On March 25, 2009, the Trustee conducted the section 341 Meeting of Creditors.

4. On February 18, 2009, Carlos Justo, the Debtor's 80% shareholder, filed a voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Southern District of Florida, Miami Division, commencing Case Number 09-12516-BKC-AJC (the "Justo Estate").

5. Thereafter, Marcia Dunn was appointed as Chapter 7 Trustee (the "Justo Trustee") for the Justo Estate.

6. On August 6, 2010, the Trustee filed the Motion to Approve Settlement. The Motion to Approve Settlement seeks to resolve several matters with the Justo Trustee. Specifically, the Motion to Approve Settlement alleged that:

    (a) The Debtor's books and records reflect that prior to the petition date, the Debtor may have transferred or purported to transfer certain assets (which

        may include the Debtor's listings and commissions due, to Sotheby's International Realty Affiliates, LLC ("Sotheby's));

(b)     The Trustee believes that the Estate has a valid cause of action against Sotheby's to avoid and/or invalidate any such transfer by the Debtor to Sotheby's and/or to determine that Sotheby's is no more than an unsecured creditor with respect to such assets (the "Sotheby's Litigation");

(c)     Marcia Dunn, Trustee in bankruptcy for Carlos Justo, a shareholder of the Debtor (Case Number 09-12516-BKC-AJC) (the "Justo Trustee") believes that she has valid grounds to seek substantive consolidation of this Estate with Carlos Justo's estate (the "Justo Estate");

(d)     The Debtor's records reflect that as of the petition date, Carlos Justo owed the Debtor $344,000.00, and that the Debtor owed Carlos Justo $1,389,807.00;

(e)     To resolve the Justo Estate's claim for substantive consolidation, in addition to the parties' respective claims against each other, the Trustee and the Justo Trustee have agreed as follows:

    (1)     The Justo Estate shall fund the Sotheby's Litigation by this Estate;

    (2)     The Trustee shall employ Ian Kukoff, Esq., as special counsel to represent him in the Sotheby's Litigation on a contingent fee of 40% of any recovery therein, subject to Court approval through a separate motion to approve his employment and the contingent fee arrangement;

(3) All proceeds of the Sotheby's Litigation shall come into this Estate and the Trustee shall then distribute the 40% contingent fee to Ian Kukoff, Esq.;

(4) Thereafter, this Estate shall retain 70% of the net proceeds of any recovery in the Sotheby's Litigation, and the Trustee shall pay the remaining 30% to the Justo Estate;

(5) The Justo Estate/Justo Trustee shall have an allowed general unsecured claim in this Estate for $1,389,807.00;

(6) This Estate/the Trustee shall have an allowed general unsecured claim in the Justo Estate for $344,000.00.

7. On August 11, 2010, Tim Elmes ("Elmes"), one of the Debtor' salespeople, associated with the Debtor as an independent contractor to procure real estate sales and listings for the Debtor, and 20% owner of the Debtor as listed in the Debtor's schedules, filed his Objection to the Motion to Approve Settlement [D.E. # 71] (the "Objection"). In his Objection, Elmes asserted that he is entitled to a share of two commissions that are affected by the settlement with the Justo Trustee. Specifically, Elmes claims he, as the agent involved in procuring both listings, has a right to (i) a portion of a $510,000.00 commission paid to an attorney prepetition as a cooperating broker and which is the subject of a pending avoidance action by the Trustee[1] (the "Avoidance Commission"); and (ii) a share of a $345,000.00 commission allegedly owed on a sale contract which is currently the subject of an action in the

---

[1] Goldberg v. Bosshardt, Adv. Case No. 09-02351-AJC . In that adversary proceeding, the Trustee seeks to avoid and recover a transfer by the Debtor as listing and selling broker of $510,000.00, paid as a real estate commission to Kurt Bosshardt, Esq., an attorney representing the buyer. The Debtor kept $255,000.00 from the other half of the commission and paid the remaining $255,000.00 to a cooperating broker. Subsequently, the Debtor paid Elmes the agreed upon percentage of the amount that the Debtor received ($255,000.00) for his services rendered as a salesman in the transaction.

17th Judicial Circuit in and for Broward County, Florida styled *Hayim v. Goetz, et al.*, Case No. CACE 0854312 (the "Hayim/Goetz Commission").  It is undisputed that the purchase and sale contracts to both the Avoidance Commission and the Hayim/Goetz Commissions were executed prepetition. With regard to the Avoidance Commission, the respective sale closed and all commissions were paid and received prepetition, and the Trustee is currently seeking to avoid and recover the transfer of [what he alleges was] the Debtor's share of the commission to the buyer's attorney, alleging that the transfer or agreement by the Debtor to share the Debtor's 6% commission with the buyer's attorney was a fraudulent transfer under 11 U.S.C. §548 because the buyer's attorney did not have a real estate salesperson's or broker's license as required by Chapter 475, Florida Statutes. With regard to the Hayim/Goetz Commission, the purchase and sale contract was executed prepetition, thus appearing that Debtor's right to the commission vested prepetition.  In both instances, the commissions recovered by the Trustee, if any, will be received post-petition through litigation and/or settlement of the respective claims.

8. Elmes objected to the Trustee's settlement with the Justo estate, claiming that both the Hayim/Goetz Commission and the Avoidance Commission may be impacted by the settlement, and that he has an equitable lien on said commissions equal to the percentage agreed-upon between himself as salesman and the Debtor as broker for his services rendered in those transactions.

9. The Trustee argues that, if anything, Elmes is entitled to nothing more than an unsecured claim in the Estate for what the Debtor would have owed him for his services pursuant to the alleged independent contractor agreements after receiving the Debtor's share of the commissions from the closings in those respective transactions.

10. At the hearing on this matter, this Court framed the issue as follows: Is Elmes entitled to a constructive trust or equitable lien on the Hayim/Goetz Commission or the Avoidance Commission if and when received by the Trustee post petition?

11. Based upon the following discussion of the caselaw addressing this issue, this Court finds that Elmes, as the Debtor/broker's salesperson and independent contractor, is not entitled to a constructive trust or equitable lien on the commissions received by the Trustee post-petition pursuant to the pre-petition contracts at issue, and instead is entitled to no more than a general unsecured claim in this Estate for what he asserts he would be owed from the Debtor for his services rendered pursuant to his alleged independent contractor agreement with the Debtor.[2] As such, any commissions received/recovered by the Trustee post-petition are property of the Estate.

## ANALYSIS

Section 541 of the Bankruptcy Code defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). It is undisputed that the Debtor as listing broker at the time that the respective listing agreements and purchase and sale contracts were executed, is the party/entity entitled to receive and/or bring a claim for the respective agreed-upon commissions from the closing/seller pursuant to the listing agreements and sales contracts. Furthermore, it is undisputed that Elmes, as salesperson would not have standing to receive those commissions or to file an action against the respective sellers to recover such commissions in the event of a dispute. Rather, a salesperson's (Elmes's) rights are as against the broker with whom his license was listed at the time that his services with respect to those commissions were performed, and with whom he has an agreement

---

[2] At this time, this Court makes no finding about the validity of any general unsecured claim by Elmes or whether same would be allowable, and need not do so for purposes of this order.

for compensation (typically a percentage of the commission received by the broker). Section 475.42, Florida Statutes, provides:

> **475.42. Violations and penalties**
>
> **(1) Violations.—**
>
> (a) A person may not operate as a broker or sales associate without being the holder of a valid and current active license therefor. Any person who violates this paragraph commits a felony of the third degree, punishable as provided in s. 775.082 or s. 775.083, or, if a corporation, as provided in s. 775.083.
>
> (b) A person licensed as a sales associate may not operate as a broker or operate as a sales associate for any person not registered as her or his employer.
>
> (c) A broker may not employ, or continue in employment, any person as a sales associate who is not the holder of a valid and current license as sales associate; but a license as sales associate may be issued to a person licensed as an active broker, upon request and surrender of the license as broker, without a fee in addition to that paid for the issuance of the broker's active license.
>
> (d) *A sales associate may not collect any money in connection with any real estate brokerage transaction, whether as a commission, deposit, payment, rental, or otherwise, except in the name of the employer and with the express consent of the employer; and no real estate sales associate, whether the holder of a valid and current license or not, shall commence or maintain any action for a commission or compensation in connection with a real estate brokerage transaction against any person except a person registered as her or his employer at the time the sales associate performed the act or rendered the service for which the commission or compensation is due. . .*
>
> * * *

(Emphasis added). Accordingly, the respective commissions at issue in this case are and can only be due and payable to the Debtor as broker (as set forth in section 475.42(1)(d), Florida Statutes), see *Arvay v. Hyman*, 187 B.R. 743 745 (M.D. Fla. 1995), and thus constitute property of the Estate pursuant to 11 U.S.C §541(a)(1). The central issue then becomes whether Elmes has

an equitable interest in the commissions received/recovered by the Trustee post petition such that the Trustee would hold such commissions in constructive trust for his benefit, thereby excluding such commissions from property of the estate pursuant to 11 U.S.C. § 541(d), and/or such that Elmes has an equitable lien on such commissions so as to be a secured creditor with respect thereto.

"The burden of proving the existence of a trust relationship is on the party claiming the benefit of such a relationship." *Harrington v. Johnson*, 157 B.R. 493, 494 (M.D. Fla. 1993) (citations omitted). A constructive trust is established by contract, whether express or implied, between two parties with a mutual understanding that the specific assets will be held in trust for the other. *Id.* The Debtor's relationship with Elmes appears to be a typical broker/independent contractor-salesman relationship, wherein the broker is paid a commission from the closing of a sale of real estate, and the broker subsequently pays his salesman an agreed upon percentage of the commission received pursuant to an independent contractor agreement. Elmes has not offered anything to this Court, nor has Elmes suggested to this Court, that his relationship with the Debtor/broker was anything more or different. Rather, Elmes simply argues that in general, brokers hold commissions in trust for their salespeople.

Courts have already considered this issue, however, in the same context and subject to identical or almost identical facts, and have held that real estate salesmen do *not* have an equitable interest in and are not entitled to a constructive trust on commissions received post petition by the debtor/broker, but rather the salesperson's rights arise only out of the independent contractor agreement with the debtor/broker, which does not create a trust relationship between the debtor/broker and his salesperson. In *Halloway v. Hyman*, 138 B.R. 301 (Bankr. M.D.Fla. 1992), the court held:

> [t]he [salesperson's] rights arise only out of the independent contractor agreement which does not create a trust relationship between the [debtor/broker and the salesperson]. . . The [salesperson] earned his fee pre-petition at the time he located a purchaser ready, willing, and able to buy the property in question on terms acceptable to the seller. *In re Charter Company,* 52 B.R. 267 (Bankr. M.D.Fla. 1985). Thus, the [salesperson's] right to payment from the Debtor arose pre-petition. The fact that the commission was paid at a closing that occurred post-petition does not change this result. *See In re Fields, Inc.,* 22 B.R. 861 (S.D.N.Y.1982). In sum, the [salesperson] has nothing more than an unsecured claim against the Debtor.

*See also, Johnson v. CMT Holding, Limited, et al*, 149 B.R. 993 (Bankr. M.D.Fla. 1993) aff'd by *Harrington v. Johnson*, 157 B.R. 493, 494 (M.D. Fla. 1993) (court, presented with identical facts as the court in *Halloway*, held that even where the debtor/broker in that case typically designated funds from real estate closings for a sales associate as commissions *and held them in trust* for the salesperson until distributed, the commissions earned from the sales were, regardless, due to and payable to the debtor, from a prepetition contract, but simply not paid until post-petition, and thus the commissions received post-petition were property of the debtor's estate, and were not subject to a constructive trust in favor of the salesman, leaving the salesman with nothing more than an unsecured claim against the debtor); *Arvay v. Hyman*, 187 B.R. 743, 745 (M.D. Fla. 1995) (court held that rights of independent contractor-salesmen, who sold real estate for debtor-broker pursuant to prepetition contracts, arose out of independent contractor agreements with the debtor, which did not create a trust relationship between the parties, and as such, at closing, such commissions were due and payable to the debtor as [listing] broker pursuant to section 475.42(1)(d), Florida Statutes, at which time, the commissions became property of the estate, leaving the salesmen with nothing more than general unsecured claims against the estate for the subject commissions).

Despite the clear holdings in the cases addressing this issue as set forth above, Elmes cites *Johnson v. CMT Holding, Limited, et al*, 149 B.R. 993 (M.D.Fla. 1993) to support his argument that he is entitled to a constructive trust on the commissions received/recovered post-petition by the Trustee from the Avoidance Commission and from the Hayim/Goetz Commission. Specifically, Elmes focuses on a fact noted by the court in *Johnson v. CMT Holding, Limited, et al* in dicta. The Court in *Johnson* noted that

> [the salesperson] was the Debtor's agent involved in arranging both listings. The listing agreements provided that the named sellers would pay a commission, representing a percentage of the sale price, to the Debtor as realtor. The listing agreements, however, made no provision for the payment of commissions to the individual agent. . . . However, both contracts for sale provide in Paragraph 14 that a sales commission was due and payable to the Debtor, the original listing broker. . . Yet it should be noted that neither [the salesperson] nor the [cooperating selling broker] is a party to either the listing agreements or the sales contracts." 149 B.R. 993, 995 (M.D.Fla. 1993).

Elmes suggests that the court in *Johnson* only ruled the way it did because the salesperson was not named in either the listing agreement or the sales contract, and the sales contract provided that the commissions were payable to the debtor (as opposed to stating that the commission was payable to both the debtor and the salesperson). Elmes suggests that if the sales agent were named or referenced in the listing agreement, as it was here, or the purchase and sale contract, then the court in that case would have ruled that the salesman would have a right to a constructive trust upon the commission when it is paid to the trustee/debtor post-petition. Elmes relies on the Sale Listing Agreement to support his position of entitlement to the Avoidance Commission because the Agreement mentions him by name in addition to the Debtor and the cooperating broker and its two salespeople involved in the transaction, and that the purchase and

sale contract giving rise to the Hayim/Goetz Commission also mentions Elmes in addition to the Debtor when referencing the brokerage commission.

This Court does not believe that *Johnson* intended the rights of a salesperson in a commission due to the broker from a prepetition contract but collected post-petition by a trustee/debtor is determined by whether the salesperson is named in any contract. Regardless of whether a salesperson is mentioned in a purchase and sale contract or a listing agreement, section 475.42(1)(d), Florida Statutes, strictly prohibits a salesperson from collecting, receiving, or bringing a claim for a commission or compensation against anyone except a person registered as her or his employer at the time the sales associate performed the act or rendered the service for which the commission or compensation is due. As such, any reference to Elmes in the purchase and sale contract or the listing agreement is of no consequence to whether Elmes would be entitled to a constructive trust on the subject commissions. Additionally, this Court finds that the references to Elmes in both the listing agreement and the purchase and sale contract are merely an acknowledgment that he was the agent involved in the listing on the Debtor's behalf—not an intention by the parties to those contracts or the Debtor to create a trust. While Elmes's right to payment arose from his independent contractor agreement with the Debtor, and not from any listing agreement or purchase and sale contract, Elmes is entitled to no more than a general unsecured claim in this Estate for commissions owed.

Thus, the Avoidance Commission and the Hayim/Goetz Commission, due to the Debtor from prepetition contracts or listing agreements, and paid to, collected by, received by, or recovered by the Trustee post-petition, are property of the Estate. Elmes' right to payment of his share of any commission therefrom arises from his independent contractor agreement with the Debtor, and as such, Elmes has a general unsecured claim in this Estate for any such commission

that is owed to him by the Debtor pursuant to any independent contractor agreement or other agreement.

With no other objections to the Trustee's settlement with the Justo Estate having been filed or raised, the Court finds that the Trustee's settlement with the Justo Estate falls within the "range of reasonableness," and satisfies the legal standard set forth in *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544 (11th Cir. 1990).  Accordingly, it is

ORDERED AND ADJUDGED that

(1) Elmes' Objection is OVERRULED; and

(2) The Trustee's Motion to Approve Settlement is GRANTED and the settlement with the Justo Estate/Justo Trustee is APPROVED.

###

Copies furnished to:

Rilyn Carnahan, Esq.
Roderick Coleman, Esq.

Attorney Carnahan is directed to serve a copy of this order upon all interested parties immediately upon receipt of same and shall file with the Court a certificate of service of same.